UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHASITY PEREZ and KRISTIN RODENBERG, | Case No. 24-cv-4310 (MJD/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| AXIS RESIDENTIAL, LLC, | |
| Defendant. | |

This matter is before the Court on Plaintiffs Chasity Perez and Kristin Rodenberg's Motion to Amend Complaint (Dkt. No. 11). Plaintiffs are suing Defendant Axis Residential, LLC ("Axis") for violating the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932. Through the present motion, Plaintiffs seek leave to amend their Complaint to add a request for punitive damages for Axis's alleged violations of the MWA. For the reasons set forth below, the Court grants the motion.

**I.     Relevant Allegations**

The following facts are taken from the proposed Amended Complaint (Dkt. No. 14-1), and the Court takes the factual allegations as true for the purpose of this motion, *see Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018).

Ms. Perez and Ms. Rodenberg both worked at Affinity at Eagan ("Affinity"), an apartment complex for older adults. (Proposed Am. Compl. ¶ 1.) Defendant Axis manages the Affinity complex, and Plaintiffs were Axis employees. (*See id.* ¶¶ 1, 4.) Ms. Perez

worked as an assistant community director, and Ms. Rodenberg worked as a leasing consultant. (*Id.* ¶¶ 13, 15.) Plaintiffs excelled at their jobs. (*Id.* ¶ 28.) They were recognized for exceptional performance, were never disciplined, and were considered for promotions. (*Id.* ¶¶ 30–31.)

In June 2023, Plaintiffs learned that their supervisor, Ashley Easton, had stolen corporate funds, and they reported Ms. Easton to Axis. (*Id.* ¶¶ 3, 37–38, 40–41.) When Ms. Rodenberg asked to meet with Ms. Easton's supervisor, Axis regional manager Lily Fairman, Ms. Fairman initially agreed but later canceled the meeting. (*Id.* ¶ 38.) Ms. Fairman then told Ms. Easton about Ms. Rodenberg's attempted report, and Ms. Fairman and Director of Property Operations Christina Koski told Ms. Easton they "have her back." (*Id.* ¶ 39.) On June 21, 2023, Ms. Rodenberg reported Ms. Easton's theft to human resources ("HR") representative Sarah Utesch. (*Id.* ¶ 41.)

HR investigated Ms. Rodenberg's report, and Plaintiffs both participated in the investigation. (*Id.* ¶ 42.) Ms. Rodenberg provided additional details about the alleged theft and other misconduct by Ms. Easton. (*Id.* ¶ 43.) Ms. Perez said that Ms. Easton had misappropriated gift cards that were intended to be employee incentives. (*Id.* ¶ 44.)

Ms. Easton voluntarily left her job on July 10, 2023, before HR completed its investigation. (*Id.* ¶¶ 45–46.) The following day, Ms. Rodenberg discovered additional receipts showing that Ms. Easton had charged personal expenses to a company card, and she told Ms. Fairman. (*Id.* ¶ 47.) Ms. Fairman met with Plaintiffs on July 12, discouraged them from making any additional reports, and said they were "wasting their time." (*Id.*

2

¶ 48.) On July 14, Ms. Utesch told Ms. Rodenberg the investigation had concluded. (*Id.* ¶ 49.)

Ms. Fairman and HR Director Lori Castro fired Plaintiffs on July 18, 2023. (*Id.* ¶ 53.) Ms. Fairman told Ms. Perez that Axis needed someone to "support the community" and she was not the right person for the job. (*Id.* ¶ 55.) Ms. Fairman told Ms. Rodenberg that her termination "wasn't personal." (*Id.* ¶ 57.) Ms. Castro told both Plaintiffs that occupancy had been declining and their terminations were a "business decision." (*Id.* ¶¶ 56–57.) Ms. Rodenberg knew the decline in occupancy was attributable to Axis's poor business practices, aggressive rental increases, denials of qualified applicants, high turnover, staffing shortages, poor security, and break-ins. (*Id.* ¶¶ 58–60). Redressing these problems was not within the scope of Plaintiffs' jobs. (*Id.*)

According to Plaintiffs, Affinity residents already mistrusted Axis's management of the apartment complex, and Axis feared that word of Ms. Easton's theft would add to that mistrust and decrease occupancy even further. (*Id.* ¶¶ 60–61.) Therefore, Plaintiffs surmise, Axis fired them to hide evidence of additional mismanagement. (*Id.* ¶ 61.)

Axis's employee handbook provides that Axis does not retaliate against employees for engaging in protected activity. (*Id.* ¶ 20.) The handbook also instructs employees to report suspected wrongdoing to their supervisor or HR. (*Id.* ¶ 21.) Plaintiffs allege that

3

Axis violated the MWA by terminating their employment for engaging in the protected activity of reporting suspected unlawful conduct by Ms. Easton.[1] (*Id.* ¶¶ 65–66.)

## II. Legal Standards

Federal Rule of Civil Procedure 15 governs the amendment of pleadings in federal court. Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The right to amend is not absolute, however. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Leave to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (cleaned up). Axis opposes the motion to amend on the grounds of futility and bad faith. A proposed amendment is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."[2] *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782

---

[1] In relevant part, the MWA prohibits an employer from firing or retaliating against an employee because the employee reports, in good faith, a violation or suspected violation of law to the employer. Minn. Stat. § 181.932, subd. 1(1).

[2] Rule 12(b)(6) requires dismissal when a pleading fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the party must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual

(8th Cir. 2008). In the context of a motion to amend, "bad faith requires more than mere negligence or bad judgment; it is the conscious doing of a wrong because of dishonest purpose or moral obliquity." *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 791 (D. Minn. 2019) (cleaned up).

Minnesota Statute § 549.191 governs the procedure for alleging punitive damages in state court. It requires a party seeking punitive damages to file a motion for leave to amend and also to support the motion with "one or more affidavits showing the factual basis for the claim." Relevant here, section 549.191 contains an evidentiary requirement that Rule 15 does not. *See Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 7286933, at *4 (D. Minn. Aug. 6, 2021) (citing *Dolphin Kickboxing Co. v. Franchoice, Inc.*, 335 F.R.D. 393, 398 (D. Minn. 2020)).

Before the Supreme Court's decision in *Shady Grove Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010),[3] courts in the District of Minnesota sitting in diversity required parties seeking to allege punitive damages to follow Minnesota Statute § 549.191. *E.g., Ulrich v. City of Crosby*, 848 F. Supp. 861, 866–69 (D. Minn. 1994). After *Shady Grove*, courts began to scrutinize the applicability of section 549.191 "in light of the

---

allegations as true and views them most favorably to the pleading party. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

[3] "In *Shady Grove*, the Supreme Court considered the potential conflict between Rule 23 of the Federal Rules of Civil Procedure and a New York law that precluded suits seeking to recover a 'penalty' from proceeding as class actions." *Speed RMG Partners*, 2021 WL 7286933, at *4 (citing *Shady Grove*, 559 U.S. at 397–99). The Court concluded that Rule 23 "provides a one-size-fits-all formula for deciding the class action question" and thus the conflicting New York law did not apply. *Shady Grove*, 559 U.S. at 399.

5

apparent conflict between the Minnesota statute and Rule 15." *Dolphin Kickboxing*, 335 F.R.D. at 397–98. Most courts in this District now apply Rule 15(a)(2) rather than section 549.191 in deciding whether to allow leave to amend a pleading to seek punitive damages for a Minnesota state law claim. *See, e.g., Speed RMG Partners*, 2021 WL 7286933, at *4; *Dolphin Kickboxing*, 335 F.R.D. at 401; *Shank v. Carleton College*, No. 16-CV-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-MDL-2666 (JNE/FLN), 2017 WL 5187832, at *4 (D. Minn. July 27, 2017). Consistent with these decisions, the undersigned magistrate judge has also found that Fed. R. Civ. P. 15(a)(2) provides the procedure that applies to amendment of a federal complaint to add a request for punitive damages. *See, e.g., Smartmatic USA Corp. v. Lindell*, No. 22-CV-98 (WMW/JFD), 2023 WL 6890929, at *4 (D. Minn. Oct. 19, 2023); *Russ v. Ecklund Logistics, Inc.*, No. 19-CV-2719 (DSD/JFD), 2022 WL 856020, at *4 (D. Minn. Mar. 23, 2022).

However, a place still remains for Minnesota substantive law on punitive damages in assessing a motion to amend. When a party opposes a motion to amend a complaint to allege punitive damages based on futility, the Court looks to Minnesota substantive law governing the scope of punitive damages, which is found in Minnesota Statute § 549.20.[4] That statute sets forth the criteria for a party to obtain punitive damages, and the Court assesses a plaintiff's factual allegations against that substantive standard. *See Dolphin*

---

[4] "Because the MWA does not itself contain punitive damages requirements, the substantive requirements for punitive damages contained in Minn. Stat. § 549.20 apply." *Ramirez v. AMPS Staffing, Inc.*, No. 17-CV-5107 (DWF/BRT), 2018 WL 1990031, at *6 (D. Minn. Apr. 27, 2018).

*Kickboxing*, 335 F.R.D. at 397–98 ("Section 549.20 governs the scope of punitive damages, and . . . Plaintiffs need to plausibly allege a claim for punitive damages that meets the substantive requirements of that statute . . . ."). The Court considers "whether the proposed amended complaint plausibly alleges facts showing that the acts of Defendant[] show deliberate disregard for the rights or safety of others." *Id.* at 401.

In relevant part, section 549.20 provides:

(b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

(2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b). "A defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others." *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994) (discussing section 549.20). More than negligence or even gross negligence is required. *See Dolphin Kickboxing*, 335 F.R.D. at 401 (quotation omitted). Plaintiffs must also allege that Defendant was "aware of a high probability that [its] conduct would cause injury to Plaintiffs." *Id.*

## III. Discussion

The Court finds that Plaintiffs' proposed amended complaint plausibly alleges facts demonstrating that Axis acted with deliberate disregard for Plaintiffs' rights. Beginning

with Axis's alleged knowledge or intentional disregard of facts that created a high probability of injury to Plaintiffs, Axis knew that Ms. Rodenberg wanted to meet with Ms. Fairman to report Ms. Easton's suspected theft and that Ms. Fairman suddenly canceled the meeting. Axis also knew that Ms. Fairman and Ms. Koski then told Ms. Easton about Ms. Rodenberg's attempt to report her and assured Ms. Easton they were on her side. Axis further knew that Plaintiffs reported the alleged theft and other misconduct to HR and provided receipts as evidence, that Ms. Easton resigned before the HR investigation concluded, and that the results of the investigation were not disclosed. Additionally, Axis knew that Plaintiffs excelled at their jobs, had never been disciplined, were being considered for promotions, and were not responsible for Affinity's declining occupancy rates. Finally, Axis knew that it was unlawful to fire employees for reporting alleged unlawful activity. An employer's knowledge that an employee "had a right to report a suspected violation of the law . . . without fear of reprisal" can support a claim for punitive damages. *Sellner v. MAT Holdings, Inc.*, No. 13-CV-1289 (ADM/LIB), 2018 WL 784062, at *7 (D. Minn. Feb. 8, 2018). The Court concludes that the allegations in the proposed amended complaint demonstrate that Axis knew of or intentionally disregarded facts that created a high probability of injury to Plaintiff's rights under the MWA.

Next, the Court finds that the proposed pleading adequately alleges that Axis deliberately proceeded to act with conscious disregard, intentional disregard, or indifference to a high probability of injury to Plaintiffs. Axis manager Lily Fairman refused to meet with Ms. Rodenberg and instead met with Ms. Easton and informed her of Plaintiffs' attempt to report theft. Ms. Fairman discouraged Plaintiffs from making

8

additional reports about Ms. Easton and said they were "wasting their time." Axis neither disclosed the results of the investigation nor disciplined Ms. Easton before her resignation. In response to Ms. Rodenberg's concern about retaliation, Ms. Utesch assured her not to worry. Nonetheless, Axis fired Plaintiffs a few days later, allegedly sweeping their reports of theft under the rug to hide its own corporate mismanagement. An employer's deliberate disregard of an employee's "right to be free from unlawful retaliatory discharge" can be the basis for punitive damages. *Sellner*, 2018 WL 784062, at *7.

Moving to Axis's argument that Plaintiffs' motion was brought in bad faith, Axis's argument rests on the precept that Plaintiffs did not support their motion with evidence. As the Court explained in Part II *supra*, evidence is not required at this stage of the case.

### IV. Conclusion

Plaintiffs' proposed amended complaint plausibly alleges that Axis acted with deliberate disregard for Plaintiffs' rights under the MWA. Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend Complaint (Dkt. No. 11) is **GRANTED**. Plaintiffs shall file the Amended Complaint within fourteen days of today's date.

Date: April 11, 2025　　　　　　　　　*s/ John F. Docherty*
　　　　　　　　　　　　　　　　　　JOHN F. DOCHERTY
　　　　　　　　　　　　　　　　　　United States Magistrate Judge